I'm happy to hear argument in our second case, United States v. White, No. 14-4375. A lot of issues and not much time. May it please the Court. My name is Paul Beers. I'm in private practice in Roanoke, and I want to thank the Court for appointing me to represent William White in such an interesting and important case concerning 18 U.S.C. 875. The main issue, there are a number of issues, Judge, although some of the sentencing issues would be moved if the Court would grant the relief I'm looking for in this case, and that is that his four convictions be vacated under 875B and 875C. And there are two threshold issues that I think are important to highlight. First of all, this case, which is a post-Alonis case, Alonis was handed down in June of 2015 by the Supreme Court. It's right on point. But this case today does not come before the Court on plain error review, as far as criminal liability goes. This is de novo review because the issue below, the instructional issue, whether or not Mr. White needed to act with subjective intent or whether the government needed to prove they subjectively intended to threaten his wife, was preserved below. There's no question it was preserved, because even though the Fourth Circuit's position was that it's an objective test, we asked for, I represented Mr. White, and we objected, and we asked for a Ninth Circuit type of instruction. On the third page of the government's brief, that's document 62, they agree this issue was preserved below. So unlike the smattering of other post-Alonis cases that are out there, which are coming up on plain error review, this is de novo. The second issue that's now. As to which count? As to all counts. But you have a different statutory basis here, don't you, for some of these counts? Count 2, Your Honor, is right on point with Alonis because that's 875C. So what about the 875B count? All right. Well, can I just say, though, initially, they agree that count 2 cannot withstand scrutiny under Alonis. Well, they may agree, but we'll talk about it later. Talk about 875B first. All right. 875B is the same error. It should be the same result. You've got a better argument on 875C on count 2. Your Honor, I think there is no argument with respect to count 2. Their only argument is. You have a better argument on count 2 than you've got on the other three. I think, no, Your Honor, I have to respectfully disagree with that. I think they're all equally good. But I just. So you have the same argument on all four? Yes, sir. Because Alonis. Well, but the other three are not 875C. That is correct, Your Honor. And Alonis is 875C. That is correct, Your Honor. 875C of the Alonis count has two elements, a transmission element and a true threat element. It's a lesser included offense of 875B, which has a third element. It has a transmission element. It has an extortionate intent element. And it has a true threat element. So the only difference is the government has to prove extortion under 875B. But still the same error that makes it necessary to vacate White's conviction under 875C necessitates vacating his convictions under B. It's the same error. Judge Turk instructed the jurors that they need to find the true threat as long as a reasonable listener, a reasonable person, would perceive that to be a true threat. He expressly told them they do not need to find that Mr. White subjectively intended to threaten his wife. What the government seems to be arguing is we don't need to worry about that under 875B because he instructed them properly under the extortion element. But that's collapsing the elements. There are three elements, extortion, threat, and transmission. So they're asking this court to just ignore the threat element under B. And that doesn't make any sense because 875B is a far more serious offense. It carries a 20-year maximum in prison, whereas 875C carries a five-year maximum. This is a classic greater offense, lesser included offense structured statute. So even aloneness on its face says we're not changing the rule. The rule is that in a criminal statute, each essential element, the mains rea associated with each essential element must be proven. The jury must be instructed on each mains rea element. So it's the same problem. They've been very creative in their brief in trying to say it's different because we don't worry about the threat element. I mean, that is the sound bite from their brief. When it comes to 875B, we have an extortion element. They were correctly instructed. So it doesn't matter that they were misinstructed on the threat element. That doesn't wash. Their other argument is that, well, it's harmless error. It's harmless error. The problem with the harmless error argument is twofold. Most fundamentally. Now, they just argue harmless error on count two. I thought they were arguing harmless error on all four. You think they're arguing harmless error on all four? Yes. Yes. The problem, though, is Justice Alito, that's his dissent. That's part of his dissent. He wanted the majority to send this back, aloneness, to the Third Circuit for harmless error review. It was remanded to the Third Circuit. It was remanded to sort out the specific intent versus recklessness issue. And they haven't even argued recklessness in this case. But Justice Alito said it should also go back for analysis of whether or not it's harmless error anyway. And the majority, Chief Justice Roberts said no. They sent it back with a specific purpose. It is now in Philadelphia for limited purposes, but harmless error review is not on the table. So how can the government come before them? Well, the factual makeup of aloneness is very different here. I mean, your man doesn't make any claim that there was some artistic role he was playing with these statements. That is correct. He has not made any artistic claims at all. I think that what was said in the aloneness about that is reflective of the fact that there could be a totally innocent way for making these statements. In aloneness, a claim that you do not have. Well, Judge, but, I mean, they're arguing, they're asking this court to look at this and say this is harmless error. Whereas aloneness said there is no harmless error review. They didn't say it expressly. But Justice Alito's complaint in the final paragraph of his dissent is why can't this be analyzed for harmless error? And the answer is clear, because it's a communicated threat statute, and mens rea is too central. It's too central to the issues. I mean, it's a communicated threat statute, and if you misinstruct the jury on mens rea, it's so central, it can't be harmless error. I don't think they've cited a case where a jury instruction was wrong on the mens rea element part of the case, and the Supreme Court said that's harmless error. In addition to that, I mean, there are other factors. And you're saying the instruction on mens rea was incorrect as to all the counts? Yes. Because of the definition that was given of a truth threat? That is exactly correct, Judge Thacker, and specifically, page 1072, it couldn't be any clearer. And this truth threat instruction applies not just to count two, it applies to all four counts. It's wrong. It was right at the time under binding Fourth Circuit precedent, but we now know it was wrong. So it taints all the convictions, not just count two. And it can't be harmless error because the court wouldn't allow it to be harmless error. They say, well, let's apply harmless error. I'm saying as a matter of law, that would be erroneous under Alonis. Even if they could apply harmless error, this isn't harmless. How could it be? How could mens rea, a misinstruction of this nature, be harmless? Well, in 875B, which is the one that was in Alonis? No, Your Honor. Which one was? C. But in 875B, there is an intent requirement right in the statute, right? Yes, for extortionate intent. And the jury is properly instructed with respect to that? Yes, with respect to extortionate intent. Right. And, yeah, I'm just not sure I'm understanding your argument, but it could be my cold. The parties agree there are three elements. This court has said there are three elements under B, the extortion intent element, transmission element, but also the threat element. And so they're reading out the threat element in the greater offense. The word threat, we now know from Alonis, from Chief Justice Roberts, what threat means under C. And under the doctrine of intra-statutory consistency, which this court consistently applies, threat in C has to have the same mens rea requirements as threat in B. They didn't get the C in the other three counts. They didn't get there. It's a lesser-included offense, as you said, but they found him guilty of B in the story. They didn't analyze C. Under count two, they had to analyze C. Yes, Your Honor. And that's Alonis is the C point. Your Honor, absolutely correct. So they didn't analyze anything about Alonis in the other three counts. They didn't get there. Because Alonis was not sure. You mean the Bill White jury in Roanoke or jury in Roanoke? Yeah, your jury. My jury. Your jury. I don't know. That's your case. That's my case, Your Honor, yes. I don't know what went on in the jury room, but I know they came out. They were instructed on the lesser-included offense. But they found him guilty. They found him guilty. Of the charge. Right. And they were misinstructed. Of the charge. So if they found him guilty of the charge, you don't reach the lesser-included offense. If they found him guilty of the lesser-included offense, then you have a much better argument here on Alonis being on all fours. All right. Your Honor, I appreciate that. But still, the threat element is the same under C and B. And as recently as. So I'm looking at the jury instructions on 1071 and 1072 that you directed us to. Yes, Your Honor. And there. I want to make sure I'm understanding your argument. Yes, Your Honor. There the judge does in fact instruct on the elements of 875B. The second one being that it contained a threat. Yes, Your Honor. But then, as jury instructions typically do, the instructions go on to give the jury's further guidance on what threat means. And the definition of threat given there is incorrect. Whether it's 875B or 875C. That's correct. It's incorrect on both. Because it keeps saying it doesn't talk about, even though the third element is in there, that the defendant did it with intent to extort, blah, blah. It says that the way you determine a threat is a truth that is not determined by what the defendant subjectively intended, but rather what the ordinary recipient would have. Yes. And that's what's wrong with that instruction. That was correct at the time. For all of it. It was objected to, and it's wrong with respect to all of them. That's right. Even though the court instructed on the three elements correctly, the court then undermined, just took out the second element. Can you look at 1075 and show me what you're talking about? Can I answer? Yes. Okay. 1075 has four subsections. Judge Motz is asking about where I was looking. Okay. Pages 1071 and 1072, and perhaps you could go from there. The only thing I would respectfully question her Honor's assessment there is I think you said that he correctly instructed on the three elements under B, and I don't think he did. He correctly instructed on transmission in interstate commerce. He correctly instructed on extortion intent. He misinstructed on threat. Right. But he, in the first instance, when he says what the three elements are, those are the three elements. Yes. But then undermined element number two with the incorrect instruction of threat throughout. Right. Just like the district court judge did in Philadelphia that was reversed in Alonis and is now back before the Third Circuit. It's that clear. As far as, you know, again, I think we need to be consistent with how we interpret the element, the essential element of what a threat is. As recently as 2015, this year, there's an opinion, it's a civil case, Shamus v. Focorino, who's Commissioner of Patents, 784 F-1319, and this court's, Judge Niemeyer's, published opinion talks about the rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning. The other cardinal principle I think is helpful here is the one that I see my time is up. Why don't you finish your sentence? Thank you, Your Honor. In Alonis itself, they emphasize the following, that there's a strong presumption in terms of scienter, a scienter requirement that should apply to each statutory elements that criminalize otherwise innocent conduct. So for them to argue, as long as the judge correctly instructed on the extortionate intent, it doesn't matter that he misinstructed on the threat, is wrong. It's just wrong because they're reading out the threat element of the statute under 875B. All right. I think we understand your position. Thank you very much. Ms. Rottenborn. So maybe you better start with that argument that we've just heard. Yes, Your Honor, and good morning. May it please the Court. My name is Laura Rottenborn on behalf of the United States, and I would be happy to start there, Your Honor. The Supreme Court's decision in Alonis is entirely inapposite to the three 875B convictions, and as Mr. Beers just explained on behalf of the appellant, it is also not a ground for reversal with respect to the 875C conviction because the government's position is that there was harmless error with respect to that conviction. Why don't you talk about the three B convictions first? Absolutely, Your Honor. Section 875B is a specific intent crime. As the appellant just explained, it requires that the defendant have sent his threatening communication with the criminal intent to extort his victim. As Your Honor is well aware, Title 18 of the United States Code has multiple threats statutes, and some of those threat statutes have a specific intent requirement like Section 875B. 875B is not the only threat statute that has a specific intent requirement. However, there are other statutes within Title 18 that criminalize the making of interstate threats that are silent on the issue of mens rea, and the Alonis decision is narrow and limited to those statutes that are silent on the issue of mens rea. It has absolutely no bearing on an interstate threat statute that has a specific intent requirement. In fact, as the Supreme Court specifically stated in the Alonis decision, a court should be reserved to add a mental state requirement to a statute that already contains one. And the quote that we have... Can I ask the other side about that? They seem to have an answer. His response was that, if I understood it correctly, that under excitement and the Alonis decision, that the court should read a scienter element into each element of the statute. However, that is misstating the law. The scienter element should be read only to the extent that it is necessary to criminalize wrongdoing and not punish innocent conduct. And it also must be only added to those crucial elements that would otherwise punish innocent or negligent conduct. In Alonis, the court spent a substantial time talking about this important distinction, and it cites the Carter case as well as other cases, including Morissette. And so, for example, in the Carter case, which involves a forcible taking of money from a bank, the court found that because there was a forceful requirement, that satisfied the mens rea or the scienter element. Had the statute been silent and not included a forceful element, then the taking of money from a bank may require an intent to steal. But because there was already a scienter element in the statute, the Supreme Court said they would not add additional scienter elements to that statute. And your submission is because you have this with intent to extort language in C, that that's all the scienter you need. Is that right? Yes, except it's with respect to subparagraph B, not C. But yes, otherwise correct. That's exactly right.  There are four subparagraphs. The specific intent only goes to the extortion, not the threat in 875B. So 875B requires that the defendant have sent his threat with the intent to extort. So it qualifies or modifies the transmission of the true threat. In other words, a jury cannot convict unless it finds that the transmission was done with criminal intent. So it completely takes care of the concern of the Supreme Court in Alanis, which was that we were somehow criminalizing negligent or otherwise innocent conduct and that that was not proper. I'd also like to take a minute to address the appellant's argument that somehow the judge misconstructed the jury on the true threat element. Respectfully, we strongly disagree with that position. The Alanis decision in no way affected the definition of a true threat. True threat is a different question than what level of scienter is required when making that true threat. So the appellant does correctly identify that there are three elements. There's the transmission element, there's the true threat element, and then there's the extortion element. Alanis does not change anything about any of those three elements. All Alanis does is it says at an 875C, which only covers the first two elements, there needs to be the additional element of a scienter requirement. So it does not change any of the elements. It does not redefine any of the elements. It rather adds an element. It inserts or injects. Correct. It inserts a mens rea requirement. Now, the court did not actually define what type of mens rea is required. It left that for another day. But of important significance, it in no way redefined what constituted a true threat. And so when Judge Turk instructed the jury on pages 1071 and 1072 that Judge Thacker just read from, on the definition of true threat, he gave both the law as it was controlling then and he gave the law as it's controlling now. In fact, the Supreme Court specifically declined to address any First Amendment questions that were raised in Alanis as to how true threats should be defined. And as a result, this Court's decision in 2012 in the first United States v. White case sets the standard for the controlling Fourth Circuit law on how a true threat should be defined. I think Mr. Beers indicated that he thought that the government is arguing harmless error as to all the counts as opposed to only the 875C count. Is that right? That is correct, Your Honor. Our first position with respect to the 875B counts is that there was no error. And then your second position is that the error is harmless because? Yes, Your Honor. And the error is harmless because the evidence of the defendant's intent in this case was overwhelming. This is not a case anywhere close to Alanis or some of the other cases. You're arguing that on the B counts too? As an alternative argument, yes, Your Honor. 875B and 875C should be affirmed because the evidence in the record regarding the defendant's intent to send a true threat is overwhelming. The jury heard multiple recorded phone conversations between the defendant and a cooperating witness. The defendant took the stand at this trial. I was one of the two trial attorneys. But if we agree with you on the 875B position, are you conceding error on the 870 on the count two? We do not concede that count two requires reversal. Are you conceding there was error on 875C, the count two? We concede that the jury instruction given on 875C lacked the mens rea requirement that is now dictated by the jury. So you're conceding error on count two and you're saying that the error was harmless? Yes, Your Honor. So you're arguing harmless error as to count two and harmless error on the others if you need it? Exactly right, Your Honor. But you admit you need it on count two? Yes, Your Honor. All right. And the statement that gave rise or the communication that gave rise to count two is you only seem to respond to the threat of legal or physical force, right? That is part of the quoted threat in the indictment, yes, Your Honor. Sent directly to Ms. White? Yes, Your Honor. So in this case, all four threats were sent directly to the victim. And although the defendant took the stand and denied sending the threat, he did admit that he made the phone calls to our cooperating witness. Why doesn't that undermine your harmless error argument? It does not undermine our harmless error argument. Well, if the jury had believed him. Had the jury believed him, he would have been acquitted that he had not sent the threat. But there was a bad instruction. No, Your Honor, respectfully. Well, there was a bad instruction on count two. The instruction on count two omitted the mens rea requirement. So the evidence can't be, it's not overwhelming and uncontradicted because he denied it. Respectfully, I disagree, Your Honor. The evidence on count two. Well, if he denied it, it's contradicted. He denied authoring the threats. So this is unlike Alanis or unlike the Houston case, for example, that has come out post-Alanis, where the defendant did not deny making the threats but rather said that they were protected by artistic license or some other First Amendment concern. In which case, then, the defendant's mental state would be relevant because at that point, intent is a central issue in the case. But here, the defendant denied making the threats altogether. He said somebody else did it. He specifically identified an alternative perpetrator when he testified at trial. So it's not that he said, I made the threats but did it innocently or I made the threats but I meant them to be a joke. Instead, he just denies making the threats altogether. Well, for your harmless error argument, are you saying that you admit the evidence has to be overwhelming and uncontradicted or are you saying it just has to be overwhelming? The standard, of course, is whether or not the court can find beyond a reasonable doubt that the jury would have reached the same verdict. And respectfully, we believe that standard is clearly met here because of the overwhelming. We have talked about it in those terms of overwhelming and uncontradicted. Are you saying we can forget about the uncontradicted part and just say whether it's overwhelming or not to see whether it satisfies us that it's harmless beyond a reasonable doubt? No, Your Honor, I am not suggesting that. I believe that the standard is whether or not the same verdict would have been reached. And in deciding whether or not that standard is satisfied, the court can look at the overwhelming weight of the evidence and whether or not that evidence was, in fact, uncontradicted. And here, the crux of the matter here is that the recorded phone conversations that took place between the defendant and a cooperating witness are, in fact, uncontradicted. And they provide the overwhelming evidence. Because although the defendant denied making the threats, he admitted to making the phone calls. And if I could just have a little leeway to explain what that means, the phone calls were made to the person that he wanted to go hire the hit man to go actually threaten the wife in person or physically beat up the wife. And prove that, do you have to use her notes that you introduced? No, this one was not recorded. These were multiple recorded phone calls. This one's recorded. Count two is recorded. Yes, there were phone calls that were recorded with respect to all four counts. The notes were just some icing on the cake that the government wanted to put in. Well said, Your Honor, yes. There were multiple recorded phone calls that were admitted into evidence. I understand that. And they were played to the jury. I understand that. I was asking you about those notes, and you're saying that that had nothing to do with it. They pale in comparison as to the powerful weight of the phone calls. The defendant admitted it was his voice on the phone calls. The jury heard the tone, heard the level of violence that the defendant connoted when he was making those phone calls, and the urgency for which the defendant wanted the money that he was extorting his wife for. And the timing of the phone calls was just a couple days after he had sent the emails to his ex-wife, which I think she'd probably prefer to be called. I believe you are right, Your Honor. And the phone calls are peppered among the threatening emails. The emails were sent from a period of May 27 until June 7, 2012. And the phone calls are interspersed with those threatening emails. So they are contemporaneous evidence of the defendant's intent to actually make a true threat. These were not empty threats. This was not idle talk. The defendant went so far as to tell the cooperating witness that he wanted her to go find somebody to carry out the threat. She informed him that she had, in fact, found someone. And the defendant provided an email address for which that now co-conspirator would be able to reach the defendant at so that they could arrange the terms of payment. The defendant then added that he would like to split the proceeds with this hired hitman, so to speak, 50-50, and that if the hitman did not deliver, then the defendant would have to go after him as well. So this is not a case where there was a close call as to whether or not the defendant intended to actually get the money that he so desperately needed and wanted from his ex-wife. Can we talk about the sentence for a minute? Yes, Your Honor. There should have been grouping here, shouldn't there? No, Your Honor. We believe that first, of course, this is a four-pronged analysis as to whether or not the counts require reversal under the plain error standard from Alano. And the first question is whether or not there was error, and I take it that's what you're asking. The second question, of course, is whether or not that error was plain. We believe the answer to both of those questions is no. Well, if you look at what the sentencing commission has given us, it seems to me that it is pretty plain. No one recognized it then. I take your point on that. If I understand Your Honor's question correctly, you're implying that the error was plain with respect to subsection D of 3D1.2. Our position, as we explained in our briefs, is that with respect to plain error review, the question before this Court is not whether or not it was plainly erroneous to decide that the counts should not be grouped under subsection D, but rather whether it was plainly erroneous to not group the counts at all under any of the subsections. In other words, the Court's reasoning as to whether or not to group the counts is irrelevant. This is generally a question that warrants de novo review, and we're not even there. We're on plain error review here today. And so the question before the Court is, were the counts properly not grouped under any of the four subsections of 3D1.2? You have to read in, even though nobody discussed D at all, that the Court had considered D and rejected it? Is that what you're saying to me? I do not think you have to read into it. I think whether or not the Court did that is irrelevant. Because the defendant did not object, and there was no discussion of the point on the record, the Court was silent as to whether or not he believed grouping was appropriate under 3D1.2, period, whether it was appropriate under any of the subsections. And because this is a question that under Fourth Circuit law is generally reviewed de novo. But is there any reason why? Is there any basis for saying that there wasn't error? Yes, Your Honor. And what is that basis? Why wouldn't D make you group here? So D would preclude grouping because that statute is exempted from grouping under subsection D as a matter of law. The next question is, is grouping appropriate under subsections A, B, or C? Appellant concedes that grouping is not appropriate under subsection C. And so the only question that is left is whether grouping was appropriate under subsections A or B. A requires the same victim and the same act. Respectfully, we think that clearly four different extortionate threats over 12 days is not the same act. Same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan. Yes, so that's subsection B, and I think that's the heart of this discussion. And why isn't it error not to group under that? Because when you look at the application notes to subsection B, they explain that subsection B is attempting to group counts that resulted in one composite harm and that it is not intended to group counts when those charges or those crimes resulted in separate instances of fear. The application notes explain, for example, that somebody who robs a victim, even if it's the same victim but robs them multiple times, created separate instances of fear. And so those charges are specifically not grouped under subsection B. Now, Mr. White did not actually rob his ex-wife, but in essence that's what he was trying to do. He was taking money from her on multiple different occasions through extortion. And just like if you had actually stolen money from somebody on multiple occasions, creates a separate instance of fear, threatening to steal money from them by way of extortion creates separate instances of fear, in this case over just shy of a two-week time period. And so they would not be grouped under subsection B. Okay, I think I understand your argument with respect to that. Can you talk to me about the district court's determination that he had committed perjury, which is like four sentences. Yes, Your Honor. It looks like maybe there hasn't been a clear enough finding. So the controlling case on that, of course, comes from Perez, which requires three prongs in order to apply the obstruction of justice enhancement, whether or not the defendant gave false testimony on a material matter with willful intent to deceive. Judge Turk's comments when he ultimately applied the obstruction of justice enhancement, admittedly were not particularly verbose, but they do satisfy the standard, and they should not be read in a vacuum. They should be read in the context of the entire sentencing hearing transcript, because the appellant's counsel, who was also trial counsel, made this very point at sentencing that in order for the obstruction of justice enhancement to apply, the court had to find that it was willful on a material matter. So the standard was actually discussed at the sentencing hearing. So it's okay because his lawyer made the argument? No, but the sentencing standard was discussed. Everybody understood what was required in order for the court to make that finding. And then, of course, the court had also heard Mr. White's testimony at trial, where he said, I didn't do it. This other woman did it. I didn't send the threats. Somebody else sent the threats. And so when Judge Turk then goes on the record at sentencing and says that he believed that Mr. White gave false testimony, quote, unquote, to obstruct justice and, quote, to get the jury to think that someone else other than you said the threats, he is saying that he gave false testimony. And, of course, it's on a material matter because the matter is who authored the actual threats. And then Judge Turk added, I can't imagine you did not know what you had done, in other words, showing that it was willful. This was not the case where Judge Turk believed that the defendant might have forgotten that he wasn't the author of the threats or might have had a moment of mental incompetence. Judge Turk was saying, I cannot imagine you did not know what you had done. That amounts to a willfulness finding. And so since he said that the defendant had specifically falsely implicated someone else and did it knowingly. I'm sorry, where did he say you falsely implicated somebody else? He said that he. . . You're saying that's implicit. Yeah. Pardon me? You're saying that. Yes, he said that he. . . Judge Turk didn't say that. No, he says maybe get the jury to think that someone else other than you did it. That's right. Get the jury to think that someone else other than you did it. And in the Fourth Circuit's decision in Gormley, when a defendant tries to falsely implicate someone else, that always rises to the level of a material misstatement with respect to an obstruction of justice enhancement. So could Judge Turk have said more? Sure. But he had heard Mr. White's testimony at trial, where Mr. White repeatedly, on multiple occasions, falsely stated that he was not the author of the threats. The jury denied that. . . Can you for us say that you have to clearly establish this? I'm sorry, can you repeat the question, please? Doesn't he have to have clearly established these three elements? Yes, Your Honor, and we believe that those sentences do meet that standard. Judge Turk found that Mr. White was trying to get the jury to think that somebody other than the defendant committed the crimes, and that he says he doesn't think, he cannot imagine, that Mr. White did not know what he had done. So by intentionally falsely implicating another, he satisfies the three prongs under Perez. And this was, by the way, not just one passing comment on the witness stand by Mr. White. In the joint appendix between pages 642 and 677, there are at least seven different times when the defendant identifies Ms. Sabrina Ganos as the person that he believes sent the threats to Mr. White's ex-wife. So this was not a one-time denial of his culpability. This was his entire theme on the witness stand, was that it wasn't him, and that he was being framed, and that somebody else did it. The jury clearly rejected that self-serving assertion and found that Mr. White himself sent the threats. And so this could not have been on a more material matter and could not have been more willful by the defendant. No, I don't think there's a problem with willfulness or materiality. I have a problem with whether the court ever found that he committed a falsehood. Anyway, thank you very much for your argument. We appreciate it. Thank you, Your Honor. Mr. Peters? May it please the Court, I'd like to start just very briefly with the sentencing issues that the Court raised. As far as the grouping, it is clearly plain error, but one thing that the government has wrong in its brief, and I've addressed this with them, and I'm authorized to tell you that they agree with me, is that they suggest that Judge Turk never expressly adopted the erroneous PSR report that has the erroneous application of 3D1.2. And that's just wrong. Document 200 is the statement of reasons under seal at the district court, and it says the court adopts the pre-sentence investigation report without change, signed by Judge Turk. So he did adopt the PSR, and that's enough to create plain error because that was the incorrect analysis that the probation officer did. He misapplied subsection D, so that is classic plain error because it made a big swing in his guidelines. So he did adopt it. It's Document 200 in the district court record. As far as the perjury. I'm sorry. I just want to be sure I understand your argument. It was clearly wrong because it didn't get to the right section in 3D. Is that what you're saying? It's wrong because the probation officer said D makes this a per se exclusion. All threats just can't be grouped. He misread it. I misread it. Judge Turk misread it to mean that you can't qualify under A or B. It wipes you out, and that's just clearly wrong. I realize that on appeal. I pointed out case law saying that. They have no case law the contrary. If you qualify under A or B. Well, what they do say is that it's not error not to go under B because then they look at the sentencing commission's explanation, right? They do. But even before we got to that level of the analysis, this judge misled by the probation officer just misapplied the guidelines. So that's procedurally unreasonable. But, yes, if we need to get to A or B, this is classic. It's the same debt. It's the same victim. He's trying to collect the same alleged debt from the same victim. It's the same method. He's alleged to have sent e-mails by the same method. Well, but I kind of take her point that this was much worse for this woman that she got four calls. They were four separate independent threats. And maybe if you weren't scared the first time, you might have been scared by the end of the four. Yes, Your Honor. But, Your Honor, it's the same course of conduct. It's the same objective. It's the same victim. B, in particular, it's the same transaction. Yeah, it looks like it fells under B. I have to go read what she talked about. Yes, and I've cited carjacking cases, which are very serious, where the circuit courts have said, yes, multiple carjackings can be. Yeah, but this is more personal than that. All right. Well, my main point, though, is they're suggesting, incorrectly, they overlooked the fact that he expressly adopted the pre-sentence report the judge did, and that's a misapplication of the guidelines. As far as the perjury, it's not sufficiently clear. She accidentally misquoted, anyway, what Judge Turk did say. What he said was, I think that was to obstruct justice. Maybe get the jury to think that someone else than you said it. I think she said something else. But maybe get the jury to think that someone else other than you said it. He never comes out and finds falsity, willfulness, intent to deceive. That's not enough. The other point is he finds him mentally ill. Bill White is mentally ill. I agree with that. The government agrees with that on the record of this sentencing hearing. The man is very, very ill. And so that needs to be taken into context with respect to whether he willfully took that stand and committed perjury. As far as the other issues, they spent a lot of time talking about harmless error. They didn't address my point, and that is that Justice Alito said that was his projection, that the majority would not send this back to the Third Circuit with permission to do harmless error. They have a non-harmless error argument with respect to the three more serious crimes. All right. Yes. Which, I don't know, seems pretty persuasive to me. I'm sorry to hear you say that, Judge. It shouldn't persuade me. We're still here talking about it. Look at the position the court would put a trial judge in, a district court judge, if that ñ in other words, under 875C, under a lonus, the district court judge called upon to apply a ñ instruct under a lonus a threat has to be, you know, you have to prove the subjective intent of Mr. White. But then under B, the greater offense, he doesn't, apparently. Apparently all that they have to find is that there was intent to extort and that the threat element goes away. It makes no sense. It's the same statute in the same terms. Extortion in and of itself is a threat. Extortion, Your Honor, can be many things. It can be blackmail. But here they need to show a threat to do bodily harm. So if someone black ñ extorts me. For 875B? Yes, Your Honor. Harm to the person. Not harm to my reputation, not harm to my property. A specific type of threat, threat of kidnapping or personal injury. And they are asking this court to read it out of the statute. So a district court judge is going to be left in the position saying, I guess the old Fourth Circuit instructions still apply under B, and we don't have to worry about subjective intent. But under C, they have to prove his subjective intent, which is a difficult showing. You're turning the statute on its head because B is the far more serious, it's the greater offense. So it is just forgetting about true threats in the First Amendment for a moment, it's turning the statute upside down. Why would the term threat to do bodily harm mean two different things in two different sections of the statute, particularly when B is the more serious one? They should have a higher burden of proof. They're asking you to give them a lower burden of proof. To me, extortion is more difficult. I disagree, Judge. I mean, they're being allowed out of it. The question is, though, you know, they need to show these threats are by, you know, that he subjectively intended to extort. He subjectively intended to threaten to do bodily harm to carry out the extortion. And they're asking you to relieve them of that responsibility. Finally, back for one moment on the harmless error, this was a close case. Under IBICIVIC, which is the 2012 decision, I think from Judge Motz, three factors, centrality of the issue, of the error, we have that here, closeness of the case, this jury was out three hours and 20 minutes and asked questions. In IBICIVIC, they were out three hours and asked questions. Can you show a close case by arguing about how long the jury deliberated? Yes, because IBICIVIC said as much. How long was the trial there? This was a single-issue case Ms. Rothborn and I had, and it was two days, I think. And how long was the trial here? No, I'm sorry. No, in IBICIVIC, I mean, in this case, I think we had a two- or three-day trial, and we had single-issue. IBICIVIC was a two- or three-day trial, I think, and it was a single-issue. The jury was out four hours and asked questions. And this Court said it's not up to us here in the En Bon courtroom as to what's a close case. It's what that jury thought. And the fact that they were out four hours and asked questions is objective. I thought it was three hours and asked questions. In IBICIVIC, it was four hours and asked questions. Our case was three hours and 20 minutes and asked questions. It's a close case for those jurors. Thank you very much. Thank you. Were you appointed to represent count? Yes, Your Honor. Oh, it doesn't show on my thing. Well, we very much appreciate you identifying the job for your client. Okay. We will ask the clerk to adjourn court and then we'll come down and brief the board. This honorable court stands adjourned, sign as I. God save the United States and this honorable court.
judges: Diana Gribbon Motz, Robert B. King, Stephanie D. Thacker